CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 27 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RICKY L. HAMLETT, | CASE NO. 7:11CV00322 |
| Petitioner, | |
| | MEMORANDUM OPINION |
| v. | |
| HAROLD W. CLARKE, | By: Glen E. Conrad |
| | Chief United States District Judge |
| Respondent. | |

Ricky L. Hamlett, a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his detention under the April 9, 2008 judgment of the Circuit Court for the City of Danville convicting him of robbery and grand larceny. Respondent filed a motion to dismiss. The court notified Hamlett of respondent's motion as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and warned him that judgment might be granted for respondent if he did not respond to the motion by filing affidavits or other documents contradicting respondent's evidence or otherwise explaining his claims. Hamlett did not respond within the time allotted for his response, making the matter ripe for the court's consideration. Upon review of the record, the court concludes that the motion to dismiss must be granted.

**Factual Background**

On April 20, 2007, Imogene Bumpass ran a few errands and then returned to her home in Danville between 11:30 and 11:45 a.m.[1] As she drove into the carport, she saw Ricky Hamlett and another man at her back door. Hamlett, the smaller of the two men, flicked the cigarette he

---

[1] See Trial Transcript ("Tr."), Jan. 30, 2008.

had been smoking onto the ground near the back door and rushed up to Bumpass, asking where she had been. Bumpass had not met Hamlett before this encounter.

Bumpass sells nutritional products, including detoxifying juice, from her home. Hamlett and his cohort told her they had come to purchase detoxifying juice. Bumpass unlocked her door, and the men followed her into the house. Bumpass locked the door behind them and leaving them in her den, went to the basement for some juice. When she brought it to them, Hamlett and the companion told her they wanted a different juice, so she left them again and made a second trip to the basement. When she returned with the juice this time, Hamlett and the companion were wearing ski masks and gloves. Bumpass could tell they were the same two men because of their builds and their clothing. She also recognized their voices from talking to them before they donned the masks.

The two men grabbed Bumpass, pushed her to the floor, and asked where her money was. She said she did not have any money, but told them where her cash box was. One man put a paper bag over Bumpass' head, and they tied her up. The men found the cash box, empty. Again, they demanded to know where Bumpass' money was. She told them the only money she had belonged to her church. They untied her feet, leaving her hands tied in front of her body, They replaced the bag with a cloth curtain tied with a belt, so she could breathe better, but not see. As the men walked her up the stairs to her bedroom, Bumpass felt a sharp object at her throat and thought it was a knife. Bumpass engaged the men in conversation, asked them about their parents, and told them that they should get their lives straightened out and go to church.

Upstairs, the men took Bumpass to the closet where the church money was. Bumpass told them she thought there was about $400, and they took it. The men put Bumpass on the bed, demanding more money, and Hamlett threatened to cut her and kill her. Bumpass heard the men

2

Case 7:11-cv-00322-GEC-RSB   Document 13   Filed 07/27/12   Page 2 of 14   Pageid#: 579

ransacking her bedroom. They took jewelry from two armoires in the room and some coins her deceased husband had collected. After a quiet period, Bumpass thought the men had gone. Then, Hamlett returned, jangled some keys, and told her they were taking her car. Hamlett and his companion left in her car, leaving Bumpass tied up on the bed. Bumpass freed herself sufficiently to get to a telephone and call the police, although she was unable to free her hands or remove the curtain from over her eyes without police assistance.

A police dispatcher called at 12:47 p.m. for officers to report to Bumpass' house, and they arrived within minutes. Bumpass gave the police a description of her attackers and, seven days later, identified Hamlett from a lineup of photographs. A police investigator photographed and recovered a cigarette butt from the path near Bumpass' back door and had it tested for DNA. Bumpass had told the officer that she did not smoke and "did not know how it got there." Tr. at 73. The officer noted that the butt, which was the only cigarette found on Bumpass' property, still had ash on it and appeared to be "fairly fresh." Tr. at 59, 83-85, 211-14. On July 6, 2007, the Department of Forensic Science issued a report stating that the DNA profile developed from tests of the cigarette butt had been "searched against the Virginia DNA Data Bank and found to be consistent with" Ricky Hamlett. Pet. Ex. D. Buccal swabs for Ricky Hamlett were later compared against the DNA profile from the cigarette butt, and on October 25, 2007, the Department of Forensic Science issued a report stating that the probability of the DNA on the cigarette butt belonging to someone other than Ricky Hamlett was greater than one in 6.5 billion. Pet. Ex. E.

Hamlett told police that he was at the Virginia Employment Commission ("VEC") office at the time of the robbery. VEC records from April 20, 2007, showed that Hamlett signed in at the VEC office at 11:01 a.m. and was called in for an interview with VEC worker Lisa Wilson at

3

11:10 a.m. which lasted until Wilson's interview with the next applicant began at 11:19 a.m. VEC records showed that a worker logged Hamlett out at 11:39 a.m.

At trial, Hamlett's girlfriend, her mother, and her mother's boyfriend all testified that they had gone with Hamlett to the VEC on April 20, 2007, and were there until at least 11:38 a.m. They testified that after leaving the VEC, they and Hamlett went to lunch together and that Hamlett and his girlfriend then went home so he could mow the lawn. A neighbor testified that Hamlett borrowed her lawnmower between 12:30 and 1:15 p.m. and returned it later that afternoon.

The defendant did not testify in his defense. Jason Hamlett, Hamlett's cousin, testified at trial that he had been to Bumpass' house with Hamlett to buy juice two times on April 17 and once on April 18, 2007, but Bumpass was not home on those occasions. Jason testified that Hamlett had been smoking on more than one of these visits.

## Procedural Background

After hearing this evidence at a bench trial on January 30, 2008, the Circuit Court for the City of Danville rejected Hamlett's alibi evidence and convicted him of robbery and grand larceny.[2] (Crim. Case Nos. CR0700133000; CR0700133100.) The trial judge found, in pertinent part:

> Well, this case is extremely difficult. There is a serious conflict in the testimony between both sides. I get amused by the Commonwealth, all he has is his friends and neighbors. Well, you know, that's who I hang out with is my friends and relatives. I don't hang out with strangers. If I was going to be accused of something I would probably have to ask my wife or children where I was because that's who I would be with. So I have always never been swayed by that argument.
>
> But in this case the scientific evidence is what I find interesting. I've got a cigarette and the picture clearly shows that it's fresh. . . . and I've got [Hamlett's]

---

[2] Hamlett also pleaded guilty to a charge of felony escape and a probation violation. He does not raise any habeas challenge to these convictions.

4

> DNA on it. I've got Ms. Bumpass saying she saw it tossed, but even if she didn't see it, it's the only one that's found, and I find it hard to believe that cigarette was out there three or four days, through the night, through the days. That is just inconceivable to me looking at it.
>
> [Ms. Bumpass] picks [Hamlett] out of a line-up seven days afterwards out of twelve, not just six . . . and . . . she spent time with [Hamlett]. You know, this is the most mis-managed robbery I've ever seen. They go over without their masks and put them on . . . after they have been with the victim awhile. It is just absurd.
>
> And his evidence is that he was at VEC with these folks, and without getting into which ones are more believable, I just find the scientific evidence to be compelling in this case. Tied in with Ms. Bumpass' ID, I believe there is enough to convict him of robbery and larceny.

Trial Tr. 239-41, Jan. 30, 2008. The judge dismissed a separate charge of abduction, finding it to be included in the case for robbery. By final order entered on April 9, 2008, as to the robbery and grand larceny convictions, the court sentenced Hamlett to a total of 40 years, with 25 years suspended.

Hamlett appealed the convictions, arguing that the evidence was insufficient to identify him beyond a reasonable doubt as the perpetrator of the crimes. The Court of Appeals of Virginia upheld the trial court's judgment and denied the appeal in a detailed, written opinion. Hamlett v. Commonwealth, No. 0522-08-3 (Va. Ct. App. Dec. 12, 2008). The Court found that the conflicts between the defendant's alibi evidence and the victim's testimony did not render the victim's identification of the defendant inherently incredible and that the trial court did not abuse its discretion in relying on that testimony and DNA evidence to find Hamlett guilty of the offenses. A three-judge panel denied Hamlett's appeal for the same reason, and the Supreme Court of Virginia refused Hamlett's subsequent appeal in a one-page order. Hamlett v. Commonwealth, No. 091012 (Va. Sept. 25, 2009).

5

Hamlett filed a petition for a writ of habeas corpus in the Supreme Court of Virginia on June 3, 2010, alleging substantially the same claims of ineffective assistance of counsel that he raises in his § 2254 petition. The Supreme Court of Virginia denied Hamlett's petition in a detailed order, finding that Hamlett had failed to satisfy the two-part test for ineffective assistance enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Hamlett v. Mathena, No. 101058 (Va. Jan. 18, 2011).

Hamlett's § 2254 petition asserts the following grounds for relief:

1. Petitioner received ineffective assistance of counsel in that his trial attorney:

    a. Failed to argue that the results of DNA tests were irrelevant to the issue of his guilt and that the admission of the tests was unduly prejudicial;

    b. Failed to argue that the results of DNA tests were inadmissible because the prosecution failed to file them at least seven days before trial; and

    c. Failed to require the testimony of the forensic analyst who performed the DNA tests;

2. Petitioner received ineffective assistance of counsel in that his attorney failed to object to the admission of the DNA tests on the ground that the evidence failed to prove the cigarette butt on which the tests were performed was the same cigarette butt that was recovered from the victim's yard; and

3. Petitioner received ineffective assistance of counsel at closing when his attorney:

    a. Failed to argue petitioner was entitled to acquittal as a matter of law because he provided evidence to support his alibi; and

    b. Failed to argue that the victim's identification of petitioner as the perpetrator should be discounted because other witnesses placed him somewhere else at the time of the crime.

6

## II

In order to obtain federal habeas relief, at a minimum, petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

To succeed on a claim of ineffective assistance, petitioner must establish that counsel's performance was "deficient." Strickland, 466 U.S. at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. Petitioner must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases," and that "under the circumstances, [counsel's] challenged action might be considered sound trial strategy."[3] Id. at 689. Petitioner must also show that counsel's deficient performance prejudiced his defense. Id. This facet of the Strickland analysis requires petitioner to prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

---

[3] Counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690.

7

been different." Id. The habeas court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

In Claim 1(a), Hamlett argues that, under the notification requirement of Va. Code § 19.2-270.5,[4] counsel should have objected in writing to admission of the two certificates of analysis of the DNA from the cigarette butt on the grounds that such evidence was irrelevant to the issue of Hamlett's identity as the perpetrator and that admission of the DNA evidence was unduly prejudicial. In addressing this claim in state court habeas proceedings, the Supreme Court of Virginia found that Hamlett failed to satisfy either prong of the Strickland analysis. The Court expressly found that counsel had no good faith relevancy objection to admission of the certificates, and this court agrees. The DNA test results were relevant to prove that Hamlett had been on Bumpass' property and corroborated her testimony that Hamlett was the man she saw smoking near her porch who later, with his companion, attacked her in her home. The Supreme Court of Virginia also found that because counsel had no basis for the objections Hamlett now offers, counsel did not violate § 19.2-270.5. In addition, as respondent argues here, Hamlett has not shown any respect in which the DNA test results had a tendency to "produce passion and prejudice out of proportion to its probative value." Coe v. Commonwealth, 340 S.E.2d 820, 823 (1986). Counsel was not deficient for failing to make the meritless objections Hamlett presents, and Hamlett does not show a reasonable likelihood that, but for counsel's omission, the outcome at trial would have been different. The Supreme Court of Virginia's decision regarding this claim was neither contrary to, nor an unreasonable application of clearly established federal law, and was not an unreasonable determination of the facts. Therefore, the court concludes that as to Claim 1(a), the motion to dismiss must be granted, pursuant to § 2254(d).

---

[4] Section 19.2-270.5 requires a party to provide written notice of that party's intent to challenge the admissibility of the results of a DNA analysis.

8

Hamlett argues in Claim 1(b) that counsel should have objected to admission of the DNA certificates because the prosecutor failed to file them with the trial court at least seven days before trial, in violation of Virginia Code § 19.2-187. Hamlett asserts that counsel made a "bad faith representation" to the court that counsel had spoken with Hamlett, who agreed to waive the statutory filing requirement; Hamlett contends that he did not consent to the waiver.

The Supreme Court of Virginia found that this claim failed under both prongs of Strickland:

> The record, including the affidavit of counsel and the trial transcript, demonstrates that counsel chose as a strategic decision not to challenge the results of the DNA analysis or the fact that [Hamlett] was present at the victim's home, and instead presented evidence that [Hamlett] had justifiably been present at the scene at times other than when the crimes occurred. Matters of reasonable trial strategy are left to counsel's discretion. Further, counsel asserts in his affidavit that the Commonwealth intended to seek a continuance of the case in order to comply with the seven-day notice requirement, and [Hamlett] has put forth no evidence that [this] request would not have been granted.

(Resp. Ex. 4, Order at 3.)

Hamlett does not contest counsel's statement that the defense strategy did not include a challenge to the validity of the DNA test results. As the transcript verifies, Hamlett had his cousin, Jason Hamlett, ready to testify in support of Hamlett's theory of the case – that Hamlett had been at Bumpass' house two or three days before the crimes, but had been elsewhere when she was attacked. Waiving the notice requirement, with or without Hamlett's express consent, was a tactical choice consistent with the defense theory to which Hamlett had agreed. Strickland, 466 U.S. at 689 (finding that habeas court cannot second-guess counsel's reasonable strategic choices). Moreover, Hamlett fails to show any likelihood that the trial court would not have given the Commonwealth a continuance to cure any defect in the notice so the DNA test results could be admitted. Thus, Hamlett fails to demonstrate that counsel's waiver of the notice

9

requirement was either deficient performance or prejudicial under Strickland. The Supreme Court of Virginia's dismissal of this claim was not contrary to or an unreasonable application of federal law or an unreasonable interpretation of the facts. Claim 1(b) must be dismissed under § 2254(d).

In Claim 1(c), Hamlett complains that counsel should have subpoenaed the forensic scientist who prepared the certificates of analysis or notified the Commonwealth that he wanted to confront the scientist. Hamlett contends that counsel's omission constituted a waiver of his Sixth Amendment right to confront the scientist, as recognized in Crawford v. Washington, 541 U.S. 36 (2004) and in Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S. Ct. 2527 (2009) (decided while Hamlett's direct appeal was pending).

The Supreme Court of Virginia found that Hamlett's failure to proffer the expected testimony of this scientist, or to show how such testimony would have altered the outcome in his case, was fatal to his claim under both prongs of Strickland. The court agrees. Without a specific showing of what the missing evidence or testimony would have been, Hamlett cannot demonstrate either that trial counsel's performance was deficient or that he was prejudiced by any alleged error. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996); see also Burger v. Kemp, 483 U.S. 776, 793 (1987) (holding that petitioner could not show prejudice where he did not submit an affidavit from the witness establishing that the witness would have offered substantial mitigating evidence if he had testified). The state court also pointed out other trial evidence that placed Hamlett smoking a cigarette and flicking it into Bumpass' yard -- evidence on which counsel could reasonably have concluded that the analyst's testimony would not benefit Hamlett's defense. Hamlett does not demonstrate that counsel's failure to call the analyst was deficient performance or show a reasonable probability that the result of the proceeding

10

would have been different with the analyst's testimony. Therefore, this claim fails under both prongs of Strickland, the state court's adjudication was not contrary to or an unreasonable application of federal law or an unreasonable interpretation of the facts, and Claim 1(c) must be dismissed under § 2254(d).

Hamlett contends in Claim 2 that counsel should have objected to admission of the certificates of analysis because the Commonwealth failed to prove that the cigarette butt tested was the same one retrieved from Bumpass' yard.[5] In addressing this claim, the state habeas court found that the trial record sufficiently established a proper chain of custody for the cigarette butt, and this court agrees. Officer Simpkins testified that she found the cigarette butt near the porch of Bumpass' house, photographed it there, collected the butt in a bag, and kept it on her person until she placed it in a police department evidence vault. Simpkins described later retrieving the butt from the vault, mailing it by certified mail to the Department of Forensic Science for testing, and receiving the certificate of analysis in return. The court finds, as did the Supreme Court of Virginia, that Hamlett has offered no evidence suggesting that anyone altered or tampered with

---

[5] In a typed addendum to his handwritten petition, Hamlett also asserts that counsel should have objected to admission of the certificates under Melendez-Diaz v. Massachusetts, in which the United States Supreme Court recognized for the first time that certificates of analysis are functionally identical to the live "in-court" testimony of the analyst who prepared the certificate. __U.S.__, 129 S. Ct. 2527, 2532 (2009). Because this decision did not issue until 2009, after Hamlett's trial, his defense counsel was not ineffective in failing to object to admission of the certificates under this decision. See Kornahrens v. Evatt, 66 F.3d 1350, 1360 (4th Cir. 1995) ( "an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law"); Walker v. Johnson, Civil Action No. 3:11cv75–HEH, 2012 WL 823784, *7 (E.D. Va. Mar. 9, 2012) (finding no ineffective assistance where counsel failed to object to admission of certificates of analysis on confrontation grounds because objection would have been futile under Virginia law before Melendez-Diaz).
    Counsel's failure to object to the DNA evidence was also consistent with a reasonable defense theory that included evidence of Hamlett's prior visits to Bumpass' house with his cousin to buy juice. Hamlett argues that the trial court based its finding of guilt primarily on the DNA evidence, but the court rejects this argument. The trial court's comments emphasize the appearance of the cigarette in the photograph as being freshly discarded and Bumpass' identification of Hamlett as the perpetrator, given her extensive interaction with him, both before and after he donned his mask. This court finds no deficient performance regarding the DNA evidence and no reasonable likelihood that even absent the admission of the DNA evidence, Hamlett would have been acquitted.

the cigarette butt before it reached the lab for testing. Because Hamlett fails to marshal evidence showing deficient performance or prejudice under Strickland, the court concludes that the state court's adjudication was neither contrary to nor an unreasonable application of clearly established federal law, and was not an unreasonable interpretation of the facts, and Claim 2 must be dismissed under § 2254(d).

Hamlett asserts in Claim 3(a) that after the Commonwealth rested its rebuttal case, counsel should have moved for acquittal as a matter of law, because Hamlett's alibi witnesses and VEC business records were uncontested and created reasonable doubt that Hamlett committed the crimes. The state court rejected this claim under both prongs of Strickland, and this court does the same. Counsel renewed his motion to strike at the close of the evidence and continued his efforts in closing arguments. Counsel asserted that Hamlett's witnesses and business records proved Hamlett arrived at the VEC with a group around 11 a.m., and that Hamlett interviewed with a VEC counselor until at least 11:19 am, and would not have had time to go from the VEC to Bumpass' house by 11:30 a.m., when she first encountered the perpetrators. Counsel emphasized a VEC counselor's testimony about interviewing Hamlett's girlfriend's mother for 45 minutes, and pointed out the lack of evidence that Hamlett left the VEC before others in his group. Counsel argued that because Hamlett's evidence proved he was somewhere else at the time of the crime, the evidence was not sufficient to find him guilty.

Counsel had no basis to argue that Hamlett was entitled to acquittal as a matter of law, however. Substantial evidence supported a guilty verdict. Bumpass testified that Hamlett robbed her and stole her car. It was the trial court's function to determine whether this evidence or Hamlett's alibi evidence was more credible and entitled to the most weight. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Counsel is not ineffective for failing to make a motion for

12

which there is "no obvious basis," Clanton v. Bair, 826 F.2d 1354, 1359 (4th Cir. 1987), and without a showing that the requested motion had a reasonable probability to succeed, the petitioner fails to prove prejudice under Strickland. Thus, the state court's adjudication was not contrary to or an unreasonable application of federal law, or an unreasonable interpretation of the facts, and Claim 3(a) must be dismissed under § 2254(d).

In Claim 3(b), Hamlett contends that counsel offered a deficient response to the trial court's inquiry concerning what weight to afford to Bumpass' identification of Hamlett from a lineup of photographs. Hamlett asserts that counsel should have attacked the validity of the photo lineup identification based on the alibi witness' testimony and on Bumpass' inconsistent statements about the cigarette butt.[6] The state court rejected this claim under both facets of Strickland.

Counsel argued extensively that Hamlett's alibi witnesses were unimpeached and that Bumpass offered conflicting and tentative testimony in identifying Hamlett as one of the robbers. Counsel argued that Bumpass' inconsistent comments about the cigarette butt indicated Bumpass' memory of events was inaccurate or embellished, casting doubt on her identification of Hamlett. When the trial court asked about the photo lineup, counsel argued that Bumpass' choice of Hamlett's picture was tentative, as reflected by her statement that the photo only "looked like" her attacker, who had looked younger than the man in the picture. Hamlett simply fails to demonstrate that counsel's performance was deficient or to show a reasonable likelihood that presenting the different arguments Hamlett offers would have resulted in acquittal. The claim thus fails under both parts of the Strickland analysis, the state court's adjudication was not

---

[6] Bumpass testified that she saw Hamlett flick a cigarette butt into her yard as she arrived at the house, but she also told Officer Simpkins that she did not know how the recovered cigarette butt "got there."

13

contrary to or an unreasonable application of federal law, or an unreasonable interpretation of the facts, and Claim 3(b) must be dismissed under § 2254(d).

### III

For the reasons stated, the court grants the motion to dismiss and dismisses Hamlett's § 2254 petition. An appropriate order will enter this day.

Petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the United States Court of Appeals for the Fourth Circuit or this court issues a certificate of appealability, pursuant to 28 U.S.C. § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. § 2253(c)(1). The court finds that petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right" and therefore, the court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal and seek a certificate of appealability from the United States Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner.

ENTER: This 27th day of July, 2012.

_____
Chief United States District Judge